○ [L. A. No. 4065.   Department One.—December 14, 1917.]

HOME SAVINGS BANK OF LOS ANGELES (a Corporation), Respondent, v. LOS ANGELES CITY REALTY COMPANY (a Corporation) et al., Defendants; J. H. BULLARD, Appellant.

CORPORATIONS—STOCK SUBSCRIPTIONS—ACTION BY JUDGMENT CREDITOR —PAYMENT—EVIDENCE—CORPORATION RECORDS NOT CONCLUSIVE.— In an action by a judgment creditor of a corporation against a stockholder to recover the amount alleged to be unpaid on his stock subscription, the records of the corporation showing that the stock had been paid in full are not conclusive as against the creditors.

ID.—STOCK SUBSCRIPTIONS—PAYMENT—CONFLICT OF EVIDENCE.—In an action by a judgment creditor against a stockholder to recover the amount of an unpaid stock subscription, where there is a conflict of testimony, a finding by the trial court that nothing was paid on the stock will not be disturbed on appeal.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. W. M. Conley, Judge.

The facts are stated in the opinion of the court.

F. C. Austin, and Samuel Barnes Smith, for Appellant.

Goudge, Williams, Chandler & Hughes, for Respondent.

SLOSS, J.—Los Angeles City Realty Company (a corporation) made and delivered its promissory note for five thou-

sand dollars to C. M. DuVernet, who indorsed it to the plaintiff. The plaintiff having recovered judgment against said Realty Company and DuVernet for the amount of said note, brought this action against J. H. Bullard and others, as stockholders of Los Angeles City Realty Company, to recover the unpaid subscriptions alleged to be due from them on their shares. The complaint alleged that Bullard had subscribed for and was the owner of ninety-five shares, of the par value of one hundred dollars each, for which nothing had been paid to the corporation. Judgment was sought against him and his codefendants for the amounts remaining unpaid on their several subscriptions, not exceeding the amount due on the judgment against the corporation.

The defendants answered, alleging, among other things, that the shares of stock held by them had been paid for in full.

Findings were waived, and judgment was entered in favor of plaintiff against J. H. Bullard and C. M. DuVernet. J. H. Bullard appeals from the judgment and from an order denying his motion for a new trial.

The only point made in support of the appeal is that the evidence does not support the implied finding that nothing had been paid on the ninety-five shares of stock owned by appellant.

It appears that J. H. Bullard had been the owner of two hundred shares of the stock of the corporation. One hundred shares were issued to him January 31, 1907. For these he paid, in cash, ten thousand dollars, the full par value of the stock. No liability was claimed with respect to this issue. One hundred other shares were transferred to Bullard by DuVernet. They formed a part of three hundred shares which had been originally issued by the corporation to DuVernet. Of the hundred thus transferred to Bullard, five were owned by Kittie L. Austin, leaving in Bullard the ninety-five shares mentioned in the complaint.

The point in dispute between the parties was whether the three hundred shares issued to DuVernet had been fully paid for by him. The appellant introduced evidence which tended to answer this question in the affirmative. The resolution of the board of directors of the corporation authorizing the issue of the three hundred shares to DuVernet declared that said shares were issued in consideration of the

transfer by DuVernet of certain notes and certain real estate, valued at thirty thousand dollars. The appellant, Bullard, testified that this value had been placed upon the notes and realty so transferred, and that the corporation had accepted them at that value. According to Bullard they were worth more than thirty thousand dollars. If the transaction between the corporation and DuVernet was truthfully described in the resolution, and if it was entered into in good faith, the shares must be regarded as fully paid. But, on the other hand, DuVernet, who was called as a witness by the respondent, testified that he had been engaged in business for himself before the organization of the Los Angeles City Realty Company; that when the corporation was formed it was agreed between him and Bullard that out of the three hundred shares issued to him he was to have two hundred and Bullard one hundred; that the notes and real property turned over by DuVernet to the corporation were, in fact, valued and taken at something less than twenty thousand dollars, and were intended to pay for the two hundred shares which were to go to DuVernet. The three hundred shares were issued to him, and one hundred of them were taken by Bullard.

If this testimony was true, it supported the finding that nothing had ever been paid on the one hundred shares thus passing to Bullard. To be sure, the records of the corporation showed on their face that the three hundred shares had been paid for in full. But the entry in the minutes was not conclusive against creditors of the corporation, who were entitled to disclose the true nature of the transaction. (*Herron Co.* v. *Shaw,* 165 Cal. 668, [Ann. Cas. 1915A, 1265, 133 Pac. 488].) It is argued by the appellant that DuVernet's testimony should not have been accepted by the trial court. Such an argument is futile here. There was nothing inherently improbable in the story told by DuVernet. The trial court was simply called upon to resolve a conflict of testimony, and we cannot, on appeal, say that it should have believed the evidence offered by the one side, rather than the other. It may be added that the corporate records themselves are not altogether in accord with the appellant's claim. In February, 1908, about a year after the issue of the stock in controversy, the president made a report in which he stated that the company had, on February 1, 1907, ''pur-

chased the assets consisting of secured and unsecured notes and certain real estate, of C. M. DuVernet, amounting to $19,945.95.'' With this evidence to support the theory of the respondent, there can certainly be no force in the claim that the evidence did not warrant the finding complained of.

The judgment and the order denying a new trial are affirmed.

Shaw, J., and Lawlor, J., concurred.